You may proceed. Thank you, Your Honor. May it please the Court, James Tice on behalf of Appellant Westmont. For the reasons explained in Westmont's briefs, this Court cannot meaningfully review whether the District Court properly exercised its discretion based on its one-sentence order summarily denying Westmont's motion to quash the shareholder subpoena, and thus, under clear precedent, this Court should, at a minimum, vacate the judgment and remand for further proceedings. Given that fact, with the Court's indulgence, I'd like to focus this morning on why we believe remand is actually unnecessary and inefficient in this circumstance, and why instead the better course is for this Court to simply end this ancillary discovery proceeding once and for all. And I think we've submitted three different ways the Court could do so. I think the most obvious and clearest way to obtain that relief is for the Court to hold that the parties here agreed to make England and Wales, and not the Southern District of Texas, the exclusive forum for resolving, quote, any dispute between the parties even relating to their negotiations over this French hotel. Did you preserve this argument? We did, Your Honor. We did. Do you have a record cite? Sure. ROA 215. It's in our opening motion to quash. We said, the disputed claim to pre-suit discovery is plainly covered under the exclusive jurisdiction clause. We went on to say, the subpoena circumvents the English proof-gathering restrictions the parties bargained for. That's ROA 213. On reply, we said again, the jurisdiction clause is plainly broad enough to cover the pre-action discovery. Hold on just a moment. I apologize. No problem at all, Your Honor. As much as I like John Coltrane, this isn't the right time for John Coltrane. So, I'll turn this off, and let me get the watch, too. No problem at all. Add 15 minutes to it. All right. You get an extra minute. Go ahead. Okay, thanks. I appreciate that. And I should mention, on ROA 213, we talk about the English proof-gathering restrictions the parties bargained for. We're, of course, talking about that exclusive jurisdiction agreement. You're saying it's ROA 213 and 215? Those are in the opening. Motion to quash. And in reply, I think we're even clearer. We say the clause is plainly broad enough to cover pre-action discovery, and is itself a dispute arising out of or relating to the agreement. Again, that's a direct argument, saying that the exclusive jurisdiction clause the parties bargained for covers this agreement.  We also said the shareholders defy this jurisdiction clause despite their contractual obligation to resolve disputes, including the availability of pre-suit discovery in the U.K. Now, Your Honor, what the other side says about waiver or forfeiture here is that we were making those arguments as part of our argument regarding the discretionary intel factors, rather than saying— Right. That's a subhead. I'm looking at 213 right now. Subject header is the intel factors. And that is true, Your Honor. But what we were saying with respect to those intel factors— That, as I understand it, is a balancing test to determine whether 1782 is appropriate as a discretionary matter. That's not really a traditional venue, forum-type argument. Well, Your Honor, I don't think so. It is a balancing test, as you say, but one of those four factors is whether the parties are seeking to circumvent foreign—  So you're saying that you're making a formal argument, not that it's part of a balancing of the factors under intel, but just a straight up, you cannot hear this case given a forum selection clause. That looks like a very different type of argument. And the discourse would regard it as such. Well, I wouldn't—I'm not sure I would dispute it as a very different type of argument, Your Honor. I understand there is a— Just a different type of argument. It is a slightly different type of argument. I think either way— Oh, a different. I'm going to stick with— Compromise. It's not very. It's not slightly. Because I think either way, we're making the same argument. We're saying you're trying to circumvent the argument—the bargain the parties reach. You're trying to circumvent English proof— Right, but in an intel context, that could be overcome by other factors. In a non-intel, straight up forum selection-type argument, venue argument, it's not subject to balancing. You just simply don't hear the case. Well, Your Honor, I think the question on waiver or forfeiture, I think, is probably more accurately described what this would be, is whether or not the district court— This was forfeiture, not waiver. I think—there certainly was not an express waiver. And I agree. This is a forfeiture. So at most, it would be forfeiture. But even in that context, the question is whether the district court was sufficiently on notice of this type of argument to rule in your favor. And I think, again, whether you're saying as a legal matter you can't enforce it or whether as a discretionary matter you should not enforce it because there is this exclusive jurisdiction agreement— I have a preliminary question. Please. Judge Gilmour gave no reasons for her ruling. How can we possibly review that on the bill? Why don't we have to remand for her ruling? It's abuse of discretion, and I don't see how we can proceed without any reasons whatsoever. Well, Your Honor, I completely agree with you that there is no way to meaningfully review. So at a bare minimum, I do think this needs to go back just so we find out what the basis for the ruling is. We don't know if it was based on a—which factor it was based on, how she balanced the case. I also don't know whether she considered the correct rule of law. She didn't cite them. But I guess I would submit that given sort of the clear legal reasons why this subpoena should not proceed, the more efficient course would be to find simply that the subpoena is unenforceable as a matter of law and end this discovery dispute now. And I think the Court could do so because, again, we will be making these same arguments once we go back on remand, and the correct result should be that the subpoena should be quashed—  —and we'll be back on appeal. It sounds like you recognize the futility in that. I mean, I think your opening point was remand is not your ideal position because—I presume because you know what the district court's going to do. Well, perhaps. We don't actually know what the district court will do because we don't actually know what the district court— Well, I'm looking at ROA, I think it's 165. It looks like the district court in an earlier phase did address the intel factors. What else is left? Well, she— It's not a long opinion, but these are not intended to be elaborate proceedings. Correct. But to be clear, that order was issued ex parte before we had appeared in the case or even had any notice of it. So she did cover the intel factors, but it was based on a completely one-sided presentation from the shareholders. We had not — we had not been part of the case. I appreciate that it's ex parte, but when the district court does do the non-ex parte ruling on Motion to Quash, isn't it fair to assume that the district court continues to agree with itself? Sort of a weird rule to say we, you know, the district court's required a copy and paste. Well, it's not just copy and paste, Your Honor. We made certain arguments with respect to those factors that showed that they were clearly wrong. I think the clearest example— Fair enough. Fair enough. That's why you're here on appeal. But to say the district court, you know, was flagrant or — you're not saying flagrant, but this notion that the district court was too sloppy and we had to send it back for a redo, I'm not sure that's fair. Well, I don't know if it's too sloppy. I don't know if I'd characterize it that way. To me, the issue is simply we don't know how to meaningfully — the court would not know how to meaningfully review what she did. We don't know whether she balanced the factors, how she balanced them, whether she ruled — When the district court says on day one, I conclude X, and then in an ex parte, in an ex parte fashion, and then you ask for rehearing, and the district court says denied, isn't it fair to assume it's because the district court continues to believe in X? If this were a rehearing or reconsideration motion, perhaps, Your Honor, but it was a motion to Quash that made both new arguments and made arguments for the first time with respect to some of those factors. And I'll give you a case in point. The first factor there is whether or not the litigant is a party to the foreign proceeding. And the reason why that's important is because in Intel itself, Intel said the need for evidence is generally less apparent when a defendant is a participant in a foreign proceeding because — Right. And the judge says Westmont is the putative defendant in the contemplated proceeding. Right. And that factor weighs against the law in 1782. In North Cyprus Med back in 2018, district courts have a, quote, responsibility to provide reasons explaining decisions that we review for abuse of discretion. Yes. Yes, Your Honor. And that has not been done. Correct. Correct. There was no balancing of the factors after we had actually participated in the case. There was no — and I would mention, Your Honor, too, in the quash order — Like, the court continues. You're right that the part that I read addresses one part of the analysis, but then it continues. But the foreign tribunal, et cetera, et cetera, it does the analysis that you asked it for. But, again, Your Honor, it was based on a completely ex parte, one-sided presentation. We don't know whether the court considered Intel's statement that, in contrast, non-participants may be outside a foreign tribunal's jurisdictional reach, and therefore that factor would weigh against 1782 in that sort of context. And the Bush v. Cardtronic's decision, which we cite in our papers as a lower court decision, but it held that this factor, when the participant is going to be — the discovery recipient is going to be a participant in the foreign proceeding, that factor weighs against. The district court doesn't grapple with that. The idea being, I assume, just let the foreign tribunal do the discovery. Exactly. And I think that kind of — Was there a hearing on the motion? There was not, Your Honor. Did you ask for a hearing on it? Yes, we did, Your Honor. The judge denied it? The judge simply did not set a hearing. I can't actually remember if we asked for the hearing or the other side did, but there was a request for a hearing on the record. The district court simply summarily denied it. You don't remember who asked? I'll double check it. It's in the statement. I think we asked for it, but I just don't want to misstate to the court. And this would have been what year you asked for a hearing? What year did we ask for it? Would it have been during the pandemic that you asked for a hearing? It was, I guess, last spring. All right. No, this spring, so 2021. All right. So, yes, I think — If I may just go back — Please. — on this jurisdictional problem. The district court says the foreign tribunal at issue requires exacting proof of corporate fraud before a case may even be filed in that jurisdiction, and pre-suit discovery in England is likely unobtainable from Westmont. I take it you strongly disagree with that analysis, but it is the district court confronting your argument, albeit before you made it. We made them. But it's — I mean, is there any mystery what the district court's going to do, given this language? Your Honor, it is likely that the district court is going to — well, I really can't say, Your Honor. I mean, I think it is possible that the district court will do exactly what it did, but I think the problem, as Judge Wiener has pointed out several times, that we don't actually know, because once we were part of the case and had our first opportunity to respond, the district court simply said, I'm summarily denying the order. I've reviewed the papers. Denied. And so we don't know, again, whether it balanced the factors, whether it confronted any of our arguments, whether it considered our legal arguments regarding our exclusive jurisdiction clause, or whether it considered the extraterritoriality or anything else. And, again, that is a defect — Did you do a motion for reconsideration when the judge denied your motion? Well, the judge required us to comply with the subpoena within 30 days, and so we asked for a stay of that so we could take an appeal to this court, and the court summarily denied that request as well, which is why we saw the stay in this court, and this court granted the stay pending the appeal. Is there another reason why remand is futile? Yes, perhaps, Your Honor. It's a practical matter. I mean, again, I don't want to speculate about what the court would do, because to me, this was simply — it was a very strange situation. I'm not used to an ex parte procedure in the district court. Usually we have a chance to have both sides argue, and then even if the court has a short opinion, says, I've considered your arguments, this is a close call, but that one's not, that's the normal course. It was just very strange here for the court to grant it based on a balancing of factors without our input, and then we had the burden of showing that it was actually incorrectly done, and then without even acknowledging the fact that we had made those arguments, including, again, with that first factor, seems very clearly to weigh in our favor. I think the circumvention point also seems to weigh in our favor, considering there is this exclusive jurisdiction clause. And just without — I don't want to put words in your mouth, so I'll just ask you the question. Please. Are you suggesting that it was improper to do ex parte, or just — I think you used the word strange. Well, Your Honor, I mean, I think it does — I'm not saying it's ex parte under precedent. It does seem like these are commonly granted ex parte. Just in reviewing the papers for this appeal, it seems to me there is some sort of problem with that procedure. It seems like, you know, it implicates due process and other things to not have us be able to confront this on the back end. So you're saying this is improper? I'm saying under established precedent, as far as I understand, it is proper to do — it is proper. Is proper. Proper to do an ex parte. To do an ex parte. It seems like that's traditionally the way it's done. It just seems strange to me, having looked at these papers. It just seems unusual. Well, it's — It's a bit odd. It's doing ex parte and still give reasons. Correct, Your Honor. And to be clear, the district court did give abbreviated reasons after the ex parte presentation of the other side. The problem that we're pointing to is that we then filed a motion to quash. We put extensive evidence and arguments in the record, including on both issues the court did balance, as well as arguments the court could not have considered because they were not before her, including, again, on exclusive jurisdiction, on the fact that we would be a participant in the foreign proceeding. And on that point, Your Honor, I'd make a brief point that Section 1782 — this is a bit of an odd use of Section 1782. It's usually more customarily used to procure evidence from third parties. It's not often used to get the party in the adversarial proceeding evidence directly from that person because, ordinarily, when you're in litigation in the U.K., you just get the evidence directly from your adversary. You don't need to go to Texas to get it. And so I think that really kind of implicates the problem here, both on that intel-first factor that we mentioned, that ordinarily an adversary in a foreign proceeding has — you know, you're not able to get 1782 relief from that party in Texas. But again, I think it also goes to the exclusive jurisdiction clause. And what the parties said — Are you going to be able to get the discovery through England? Because the district court's analysis suggests that the English court wouldn't allow it. It might not allow it, Your Honor. Certainly their counsel, Declarant — Are you going to oppose it in England? I'm not saying that's a positive, but I'm assuming you will. I'm assuming we will. But I think that goes to the exclusive jurisdiction clause, Your Honor. When the parties agreed to negotiate the sale of this hotel, they said, let's resolve all of our disputes in a single forum in England. I think you have an interesting forum selection argument. I just worry that it's forfeited. Well, I don't think it is, Your Honor, because again, I think ultimately it's the same argument, whether you're saying you should not or you must not enforce this because there's an exclusive jurisdiction clause. Again, obviously arguments can always be clearer, but this Court has also said that arguments can be refined on appeal. And again, I think the thrust of our argument below was you should not enforce this because you have agreed to resolve all disagreements in England exclusively, and parties should be held to their bargain. If any dispute means any dispute, exclusive means exclusive, and parties should be held to their bargain. That's what the Supreme Court has said in Atlantic Green, and this Court has said on dozens of occasions. I don't think the language could be much clearer in the exclusive jurisdiction clause. Any dispute. And I do think it's striking that the other side does not offer any reading of the word dispute or any dispute that would exclude this present discovery dispute. All right. I see that I'm out of time. I'm happy to answer more questions here. Thanks. Mr. Kim. Good morning, Your Honors. May it please the Court. My name is Austin Kim for the appellees. Before I start, I'd like to address a few of the points that have been raised during the appellant's argument to clarify a couple of issues. With regard to Judge Graves, you asked whether a hearing had been requested. And the hearing was requested by us. And that's at record 1453. And the reason the hearing had been requested was because the appellant's motion to quash had been fully briefed for about two, two and a half months, and we had not yet received a hearing. And so we requested a follow-up conference with the Court in case she required any additional information. So that clarifies that issue. But they didn't request a hearing. That's correct, Your Honor. And we requested a hearing because the motion to quash had been fully briefed. How long after the filing of their motion did you request a hearing? You said two and a half months. Right. So the motion had been fully briefed by April 2nd, and then we requested a hearing on July 1. And then on July 26th, the Court issued the order denying the motion to quash. Now, Judge Wiener, you'd asked about North Cyprus. Now, North Cyprus is a different situation because in North Cyprus, what was at hand was a statutory attorney fee issue that required findings of fact. Because of that issue, a summary order that did not have any findings of fact was found to be an abuse of discretion. And that's different than 1782 because 1782 falls under the umbrella of Rule 52, which expressly does not require a court to issue findings of fact or rulings of law on ruling on any motion unless otherwise provided by the federal rules. Well, our standard of review of that is still abuse of discretion. That's correct, Your Honor. And so how do we do it if the district court says nothing? Well, I would refer to what Judge Howitt mentioned earlier, that we have the authorization order. And the authorization order does go through the three statutory factors, which Judge Gilmour found in our favor, and does go through the four intel factors also in our favor. Was counsel's opposite's client in the case at that time? No, Your Honor. That was after the fact. But the reason why it's separate is because they had the opportunity to put it in opposition. And as Judge Howitt mentioned, when the judge denied the motion to quash, the presumption here is that she stood by her prior order. Had the appellants presented an argument that was convincing or met the statutory burden or the discretionary burden to change her mind, she would have. And so ultimately it becomes an issue. For us to determine abuse of discretion, we go back to that ex parte prior to the clients of counsel opposite getting into the case. Well, that would be her findings. Because in each of the cases where the appellants cite that there was a lack of an explanation, it's because there was no prior order in place. Those go to attorney's fees cases or refusal to grant leave to amend. In the line of cases that, including WeWa that Your Honor had authored, in WeWa and in Texas Keystone and in Bravo, the reason why those cases are different, and particularly in Bravo and Texas Keystone, is because there was an initial 1782 order that granted the application, and then there was a motion to quash that was granted without explanation. There's an inconsistency between the initial order and the motion to quash, and there was no explanation for why there was a change of mind. In this case, we have a consistent application by Judge Gilmour. She authorized the 1782 subpoena when she granted the 1782 application, and then she reauthorized the same subpoena and ordered compliance promptly thereafter when she denied the motion to quash. So there's this linear line of logic flows through, and the appellants complain that they're unable to know what the judge was deciding, but we know what she decided. We know what she considered, and we know her findings. And so it is their burden to show that the prior findings and the authorization of discovery was an abuse of discretion. That they have not done. With regard to the intel factors, and it is curious that much of the time was spent discussing the intel factors, but you'll notice that the appellants on their opening brief, their complete discussion of the intel factors was in a single footnote at the back end of their brief, one footnote discussing all four factors in three lines or four lines. And then on reply, after we had pointed that out, they claimed to be constrained by this court's precedent, and they couldn't argue the intel factors. But then plainly that's false, as demonstrated by today's argument and by the fact that in their prior submissions to this court asking for an emergency stay, the intel factors and their arguments on the intel factors was a fundamental reason why this court granted a stay. So it's a little bit odd for them to now claim on appeal that they're unable to argue the intel factors. So with that, I would like to address one last point, and that goes to the issue of remand. And Judge Wiener, you'd ask whether the correct course might be to remand this case, and Judge Hull, you had noted that the futility of a remand because she has told us what she's going to do, why she did it, and she'll probably do it again. And so there's two issues, is that there's no need for a remand because we know what Judge Gilmour had issued and why, and the appellants don't explain what's missing. In Wewell, for example, Your Honor had mentioned that we don't know if the judge could have modified the subpoena instead of quashing it. We don't know if the judge could have given the applicant an opportunity to amend the subpoena to make it more narrow or do anything other than quash it. And for that reason, the court found that remand was appropriate because there was some reason and some missing logic that could not be explained. And this is a final point on the remand issue that I think is appropriate for the court's consideration, is that Judge Gilmour earlier this year announced her retirement, and so her retirement is effective January 2nd of this upcoming year. And so a remand at this point is not really a remand, and that's sort of a redo is what will happen in most likelihood because it will be assigned to a new judge, and presumably the appellants are going to remake their motion and we're going to have to go through this all over again, and we'll be here December of next year. So for that reason, I don't think that a remand is appropriate in this situation. Can we talk about the form selection clause? Yes, Your Honor. Yes, with regard to the form selection. What is the jurisdiction in relation to any dispute? Yes, Your Honor. Why doesn't that cover this case? Well, a form selection clause has never been held by any court to extend to a discovery issue. In each case, and including this court's precedent. It is an open issue in our circuit, right? I know there's like a Tenth Circuit case that goes the other way. Right, so in Marine Chance. That goes your way, I should say. Yes, Your Honor. But our court has not done that. Well, in Marine Chance, what this court held was that this court evaluates form selection clauses to understand which causes of actions are covered by the form selection clause. Right, and this one says any dispute arising out of or in relation to this letter. Well, that's correct, Your Honor. Is that what this is? It's a discovery dispute as opposed to a merits dispute, but it is absolutely in relation to this letter. A form selection clause is intended to cover claims. I understand that the word says dispute, and colloquially people use the word discovery, discovery dispute in colloquial terms, but in terms of a legal matter, a form selection clause is generally understood to cover causes of actions and claims. So how would you have drafted it if the parties had intended to cover 1782 and other discovery disputes? Well, you had mentioned discovery. That's the only way to cover discovery is to say it, just use that magic word? We could use discovery. Because it doesn't say disputes on the merits or disputes involving claims. It says any dispute arising out of or in relation to this letter. It's pretty broad. What I would say is that— You've all seen form selection clauses that are not as broad as this, right? Yes, Your Honor. What I would say is that appellants have not cited any case where a form selection clause has been interpreted to include a discovery dispute. Now, picking up on Your Honor's waiver point, and appellants had talked about Atlantic Marine. In Atlantic Marine, the Supreme Court made expressly clear the proper way to enforce a form selection clause, and that's through a form of nonconvenience motion. That's the only way. You can't make a naked assertion in an appeal brief for the first time. You have to make an action motion. Now, the appellants have decided not to do that, not to follow that path. For whatever strategic reason, they can't raise it now for the first time here and say, well, we've mentioned it before as a discretionary factor. Now we want the relief of a form of nonconvenience without making a form of nonconvenience argument. So I believe that the form selection clause argument not only has been waived, but it's procedurally improper to be considered by this Court. And even if not waived, I would direct this Court to page 33 of our brief where we do go through a few cases where courts have found that 1782 discovery is appropriate, even in the existence of a form selection clause. And the reason why courts have gone that way is because a form selection clause does not cover investigations. I mean, we are entitled as the plaintiffs to investigate our claims, pursue the evidence where it leads, and gather the documents and the testimony that we believe is necessary to prove our claims. Interpreting a form selection clause to also cover discovery would basically mean that the parties have agreed beforehand to handicap their ability to investigate their claims and only investigate claims that can be with discovery that's within this territorial border. I think that is an extreme reading of a form selection clause, not what was intended by the parties. Now, one point on the form selection clause, even if waiver is not found, the primary case that the appellants rely on is Biederman. Now, in Biederman, that was an arbitration case for a completely different reason. It didn't discuss the scope of the clause. It didn't discuss anything else other than the fact that this court held that a private international arbitral tribunal is not a international, a private international arbitration is not a foreign international tribunal under 1782. That's a very narrow reading. From that case, it is not appropriate to make the broader finding that all form selection clauses preclude 1782 discovery. The next point that I'd like to go through is to the four-use statutory prong of 1782. Now, with regard to the merits of the contemplated English proceedings, the appellants have established a factual and legal basis for their claim. We have the pre-action letters. I apologize. Let me go back to the earlier discussion. Why is a motion to quash not an appropriate vehicle for enforcing a form selection clause? Because, I mean, literally speaking, a motion to quash is to get rid of a discovery order, and lack of proper form would be one basis for that. Yes. So in Atlantic Marine, they discussed that because there was a circuit split that debated the proper way to enforce a form selection because before then people were making 12b-6 motions, 12b-3 motions, and 1404 motions. And so the Supreme Court came out and said, well, no, no, no, that's not the proper way to do it, not a 12b motion. You have to do, or you should do, a form nonconvenience motion. So that would be sort of analogous, an analogous situation to a motion to quash. With regard to the four-use and the reasonable contemplated proceedings, I would ask the Court to look at our pre-action letters, which can be found at the record at 118, and also counsel's declaration, which can be found starting at, I believe, 145, I believe. And so we detailed out in great length the factual basis for our foreign English law claims, the legal basis for our claims, the documentary evidence that we had gone through, the communications that we had with the appellants, and it's all laid out in crystal clear language. Now, the appellants sort of nitpick at certain words that have been used in it, but then the plain language and the import of the document is that here are the facts, here are the claims, and this is why we're going to sue you. And before we engage in this battle of litigation, we are requesting certain documents. The one paragraph that the appellants have latched onto, and this is at record site 155, paragraph number 38. Now, they claim that the English counsel, our English counsel, has somehow conceded that the proceedings are not meritorious or there is lack of a basis. Now, that's based on reading the first two sentences of the paragraph and ignoring the third sentence. And so in the first two sentences, he does say that at the present time the evidence is not sufficient, but he ends with that is because the shareholders currently lack direct evidence of Westmont's state of mind at the time of the negotiations. That's the key part. That's the evidence that we are looking for in this proceeding, the state of mind evidence that's solely and exclusively in Westmont's custody and control, evidence that this court has repeatedly found in an international shortstop, is a proper subject of discovery and should be provided because without that, there's no way to know what's going on in someone's head unless the person tells you what's going on. And that's the discovery that we're looking for, and that's the discovery that Judge Gilmour had authorized in the 1782 subpoena. The next point I'd like to talk about is extraterritoriality. Now, this is an issue that has not been resolved by this court, but it has been resolved by the Second Circuit and the Eleventh Circuit, and they both came out the same way. They read the plain text of the statute, and the plain text of the statute, one, only requires that the person or the respondent for whom discovery is sought resides in the district or is found in the district, and then two, there's an express incorporation of the federal rules, and the federal rules permit extraterritorial discovery. That's a plain logic, a plain reading of the statute that the Second Circuit and the Eleventh Circuit have signed on for, and this court has previously acknowledged the Second and Eleventh Circuits but did not address the issue because it was unnecessary. And we believe, for the same reasons in Banco Pueo, that there's no reason to address the extraterritoriality circumstance in this case, the reason being because, you know, the appellants have repeatedly conceded and acknowledged. The discovery is here. The discovery is in the Southern District of Texas. It's available. You know, there are documents, but somehow they're claiming that because somebody in England wrote it, it's not our document, it's not under our control. Well, they haven't submitted any evidence that the servers on which the documents are stored or any of the people who would be in charge of maintaining those documents are abroad. My understanding is that Westmont is a Texas corporation. They're not registered to do business in the U.K. They're exclusively in Houston, Texas-based, and that's their headquarters. So it's a little bit odd for them to, one, say that they have, that the documents are not accessible and within their possession, custody, and control, and two, for them to then argue that there's nobody within their corporate headquarters who is able to act as a custodian of records. I mean, that's the argument they make, but then I think that Judge Gilmour was within her right to reject that absurd argument when she denied the motion to quash. So I would say that there's no need for this court to address the extraterritorial issue because there is no extraterritorial issue, but then if it does, that the court should— Correct me if I'm wrong. That Judge Gilmour's reasons for denial of the quash under 1782 subpoena was those given before these parties, the Westmont, was even in the case? That's correct, Your Honor. Can I go back to your Atlantic Marine compliance in that case? Yes. As I understand it, Atlantic Marine says that the preferred method is the motion to transfer. That would be for a domestic transfer between districts, but then if— Right, and that's exactly my concern is that you're not doing that here, right, because you're not transferring it to another district court. Right, but later on in the decision, the court talks about foreign venues, and then in that context, the court says the forum nonconvenience is the proper method for enforcing a forum selection clause. It looks like the court also reserves the question of whether 12b-6 would be available. They may have, but I think what the primary issue was was because there was a 12b-3 split where there was improper venue, and so I think that's the question the court was answering. But nonetheless, I mean, they're sort of directing litigants, if you want to enforce a forum selection clause, forum nonconvenience is the way to go, which did not happen here. Now, I have a few seconds left, and all I would say is that in the back of the reply brief on page 14, note 2, Westmont claims that they do not do business in China. That's nowhere found in the record. There's no record site. They've never disputed it in the one year that we've been in litigation, and the court should not consider that new fact that has no record site and should disregard it for purposes of the decision. And so with that, unless the court has further questions, I will rest. Thank you, Your Honor. Rebuttal. Thank you very much, Your Honors. If you have any questions, I'm happy to answer them. Otherwise, I'll try to make three brief points. The first one, going back to the forum selection clause, I think there's no dispute that parties can draft forum selection clauses broadly or they can draft them narrowly. One way to have drafted this clause would be to say any dispute or excuse me, any claim arising out of or relating to the agreement should be adjudicated exclusively in England. That would make clear that claims must be brought in England, but any other form of dispute, such as this one, a discovery dispute, should be brought only in or could be brought anywhere else. They didn't do that. They also didn't say claims arising out of the agreement, which would be another way to do it. I mean, I think this dispute does arise out of it. But, again, there are ways to narrow it. And our point is not. Because it also has in relation to. Correct. What about this Atlantic Marine point? The Atlantic Marine point, Your Honor, I think it does say ordinarily in litigation the way to properly invoke a foreign forum selection clause is through a foreign nonconvenience motion. But it's a little ill-fitting here. We're not saying you should transfer this discovery application to England. We're just saying the subpoena should never be enforced. So I don't really think it applies. Do you think a 12b-6 analogy might hold here? Yeah. I mean, it did reserve 12b-6, but in general we're. . . Even Sachs' amicus brief? Excuse me? The court talks about Professor Sachs' amicus brief. Exactly. The parties had not preserved that below. They had tried a 12b-1. . . They didn't try 12b-6, right. I think there was a 12b-1 or 12b-2 motion or something like that. And what the court said was ordinarily you should do a motion to transfer for domestic or forum nonconvenience for international. But again, I think it's a little ill-fitting in this context. I think the point is here we're saying this subpoena should be quashed, period. And the reason is because of this exclusive jurisdiction clause, we're not actually asking the court to suggest that they go file another proceeding if they'd like to. Your point is the Atlantic Marine is a transfer case. This is a just outright elimination case. Even the forum nonconvenience discussion was dicta in that case, Your Honor, but I think in general, yes, it's an ill-fitting application to a discovery application, which is not a freestanding lawsuit. The merits of this dispute is the discovery. It's not anything else. I think with respect to the exclusive jurisdiction, the analogy to arbitration actually fits quite well. We have contractually agreed to litigate any dispute in one specific forum, and with that comes the procedural rules of that forum, including potentially discovery, as well as things like fee shifting, as well as things, you know, pleading standards. All of those arise. I don't know why they get to pick and choose, you know. We'll abide by English pleading standards and fee shifting provisions, but not discovery standards. I think also, Your Honor, to judge how to directly respond to your point, I think the Aventis case we cite in our brief on page, I believe, 17 of our opening brief. It's a Southern District of New York case from 2009. That was a case that actually on a motion to quash in a Section 1782 case said, and I can quote the exact language, but it says that the parties were trying to circumvent foreign proof gathering restrictions that were contractually provided for by the parties in the choice of forum, and then in parentheses France clause. These sophisticated parties freely chose the French forum with all its requisite procedural rules. The Bush v. Cartronics case from 2020, it's a Southern District of Texas case I mentioned earlier, it did the same thing, albeit in the balancing of the intel factors. But I do think that that's some precedent showing that a motion to quash would be appropriate in this circumstance. A final point on exclusive jurisdiction, I think it's important also to note that under this Court's precedent, those sorts of claims of foreign nonconvenience and things like that can't be waived, excuse me, can't be forfeited. It can only be waived through either explicitly or affirmative conduct. So on a remit, we would be able to make this legal argument, even if for appellate purposes this Court found it forfeited. I don't think it is forfeited for the reasons we've mentioned, but the argument for foreign nonconvenience would still remain. Another quick point, on the intel factors, I think my friend on the other side's discussion and as well as the District Court's lack of discussion sort of proves our point. I think this Court has been very clear in the Wewa case and in the Inree Lloyd's case that this Court is not supposed to weigh the factors on abusive discretion in the first instance. It's not supposed to substitute its judgment. To the extent we talked about the intel factors, it was to say the 1782 order, the original order can't be enough because we have these very persuasive arguments on the other side, including a complete inverse of the Factor I, and the Court simply failed to address it. So we're not asking this Court to weigh discretion in the first instance. That's the District Court's job. We're just pointing out examples of why the intel factors really show the need for that discussion. And finally, I'd point out that a remand would not be futile, Your Honor. You know, the District Court just simply did not discuss arguments that we were not in a position to make before we appeared in the case, such as the exclusive jurisdiction clause, extraterritoriality, whether or not we would be a participant in the foreign proceeding, all of those things. So I think given that we spent a lot of money and time on this collateral proceeding despite having agreed to litigate all of our disputes in a single forum, we would ask this Court to simply reverse, but at a minimum to remand. Thank you very much. Thank you, Counsel. The Court will take this matter under advisement. This concludes the matters that are scheduled for oral argument on today's docket. We are adjourned for the day.